**LEIMER v. WOODS, Housing Expediter.**
**No. 14403.**

United States Court of Appeals
Eighth Circuit.

May 19, 1952.

Walter A. Leimer pro se.

Cecil H. Lichliter, Special Litigation Atty., Office of Rent Stabilization, Washington, D. C. (Ed Dupree, Gen. Counsel, and Leon J. Libeu, Asst. Gen. Counsel, Office of

Rent Stabilization, Washington, D. C., on the brief), for appellee.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

This suit was originally instituted against appellant in March 1947 by the Administrator of Temporary Controls,[1] under the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq., for alleged violation of the Rent Regulation for Housing, 8 F.R. 7322, in having collected rents in excess of the established maximum, on some housing accommodations located in the Kansas City (Missouri) Defense Rental Area. The complaint sought an injunction and a restitution order under section 205(a) of the Act, 50 U.S.C.A.Appendix, § 925(a), and a judgment for damages in favor of the United States, in twice the amount of the overcharges, under section 205(e) of the Act, 50 U.S.C.A.Appendix, § 925(e). Appellant denied that there had been any overcharges and, both in the body of his answer as well as by separate notation at the bottom thereof, he made a general demand for a jury trial, within the requirements of Rule 38(b), Federal Rules of Civil Procedure, 28 U.S.C.A.

Disposition of the case on its merits was delayed for various reasons, including a protracted series of efforts on the part of appellant, acting as his own attorney, to prevent the action from being maintained against him.[2] Before the case finally came to trial in 1951, the Emergency Price Control Act had long been expired[3] and the field of rent control had been made subject to the Housing and Rent Acts of 1947, 1948 and 1949, respectively, 61 Stat. 193, 62 Stat. 93, 63 Stat. 18, as amended and extended, 64 Stat. 253, 50 U.S.C.A.Appendix, § 1881 et seq.

During the pendency of the suit, changes and substitutions in the official plaintiff had resultingly occurred,[4] and other amendments to pleadings had also been made. There further had been a formal order entered in the proceeding denying appellant the right to a jury trial on any issue. When the case finally came to trial, the court treated it as constituting entirely a matter of equitable jurisdiction, including the determination of whether violations had occurred and in what amount, and whether such violations had been wilful or the result of failure to take practicable precautions against their occurrence, as a basis for damages and the amount thereof, under section 205(e) of the Emergency Price Control Act, as amended, 50 U.S.C.A.Appendix, § 925(e), in relation to the violations originally alleged, and under section 205 of the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1895(a), in relation to some claimed subsequent violations included in the second amended complaint.

The second amended complaint prayed for relief in the following form: (1) For a judgment in favor of the United States as damages in three times the amount of the alleged overcharges; (2) for an order of restitution in favor of the tenants, with a deduction of the amount thereof "from the treble damages adjudged to the United States;" and (3) for an injunction against further violation of the Housing and Rent Act then in effect and any superseding Act.

The court's decree was as follows: "(a) Ordered, Adjudged and Decreed that" appellant be enjoined from charging and collecting rent in excess of the legal maximum on the housing accommodations involved (whose location was set out) and from otherwise violating the Housing and Rent Act of 1947, as amended, and the Regulations issued pursuant thereto; "(b) It is

---

1. See Executive Order 9809, 11. F.R. 14281, 50 U.S.C.A.Appendix, § 601 note.

2. In addition to his efforts in the trial court, appellant also made attempts directly to have this court block maintenance of the suit against him. See Leimer v. Reeves, 8 Cir., 180 F.2d 891, and Leimer v. Reeves, 8 Cir., 184 F.2d 441.

3. The Act expired on June 30, 1947.

4. In the second amended complaint, upon which the decree rendered herein was based, the Housing Expediter, Office of the Housing Expediter, constituted the official plaintiff.

Ordered that the Defendant pay to the Treasurer of the United States a Cashier's Check in the sum of $320.32 for and on behalf of the tenants, by mailing same to the Office of the Housing Expediter" at St. Louis, Missouri; and "(c) It is further Ordered that the Defendant pay to the Treasurer of the United States a Cashier's Check in the sum of $640.64 for damages." It will be noted that the allowance of damages (treble damages with the amounts of the overcharges deducted as restitution) was not made in conventional general judgment form, with collection enforcible only through execution and its auxiliary processes, but the payment of such damages, similarly as the restitution directed, was made the subject of a specific command and of the summary reach of a court of equity by an order to "pay to the Treasurer of the United States a Cashier's Check in the sum of $640.64."

The principal contention of error urged for reversal is the court's denial of appellant's demand for a jury trial. This contention of course is of relevance and significance only on the question of the court's right, in the face of appellant's demand for a jury trial, to adjudicate the issues of violation, amount of overcharges and whether such violations had been wilful or the result of failure to take practical precautions, for purposes of damages under section 205(e) of the Emergeny Price Control Act, as amended, 50 U.S.C.A.Appendix, § 925(e), and under section 205 of the Housing and Rent Act of 1947, as amended, 50 U. S.C.A.Appendix, § 1895. The granting of general injunctive or restitutive relief, under section 205(a) of the Emergency Price Control Act, as amended, 50 U.S.C.A.Appendix, § 925(a), or section 206(b) of the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1896(b), plainly is an exercise of jurisdiction by a court of equity and as such does not involve any right to a jury trial. Shields v. Thomas, 18 How. 253, 262, 59 U.S. 253, 262, 15 L.Ed. 368; Porter v. Warner Holding Co., 328 U. S. 395, 402, 66 S.Ct. 1086, 90 L.Ed. 1332; Ebeling v. Woods, 8 Cir., 175 F.2d 242. But equally as clearly, we think, in relation to the statute, must the awarding of damages under section 205(e) of the Emergency Price Control Act or section 205 of the Housing and Rent Act involved be regarded as wholly an exercise of jurisdiction on the part of a court of law. See Porter v. Warner Holding Co., supra, 328 U.S. at page 402, 66 S.Ct. 1086.

The damage right created by these statutes was legislatively given the form of an independent legal liability, without any substantive relationship to the equitable relief of injunction and restitution for which the statutes provide, and in general therefore it could not be treated judicially as having substantive subservience or incidence to these equitable remedies or their administration. The wholly distinct character of the two classes of rights created is doubly emphasized by the special line of separation or demarcation which the statute has drawn between them in their very grant. The statute vests the equitable rights of injunction and restitution in the Government and its agencies alone, while the legal right to damages is initially separately vested in the person overcharged. In connection with the damage liability, there has contingently been granted to the Government what amounts in effect to a right of succession, in that it "may institute such action", 50 U.S.C.A.Appendix, § 1895(c), if the person overcharged fails to bring it within a certain time or is not for any reason entitled to do so—the purpose being to enable the statute to succeed as fully as possible in its remedial object. This contingent, successory right to the separate legal cause of action for damages could hardly soundly be said to cause the liability to assimilate any inherent ancillariness to the remedies of injunction and restitution as initially independently established or to a court of equity's administration of that relief. Judicially, therefore, damages under the statute cannot be awarded to the Government as an ancillary incident in the exercise of the court's equity powers to deal with violations for purposes of injunctive or restitutive relief, such as the trial court here appears to have assumed to do. Cf. United States v. Friedland, D.C.Conn., 94 F.Supp. 721, 723; United States v. Mesna, D.C. Minn., 11 F.R.D. 86.

Nor, on this concept, is it any more possible to argue that the Government's attempted interlinking of damages with restitution, by the request in its second amended complaint to have any restitution granted deducted from the damages awarded, entitled the court to treat the damage liability in equitable incidence to the question of restitution, so as to permit it to award damages in equity as a matter of enabling it to effect disposition of the question of restitution. Apportionment or deduction of part of the recovered damages as restitution, in accordance with the prayer of the complaint, would involve, in its relationship to the cause of action for damages, simply subsequent, mechanical, appropriative action. And an honoring of the request, as the court did here, instead of giving rise to any basis for subordinacy as to the cause of action for damages, would rather tend to leave the situation devoid of any consideration, even procedural,[5] for at all dealing with the question of restitution, until there had been a proper determination and recovery of damages at law—or in other words to suggest naturally and practicably an abeyance of the restitution jurisdiction until the damage recovery, which the complaint sought to make its source, had come to have existence.

In repeated and extended development—since the Government's succession to the right to damages is not made by the Price Control or Housing and Rent statute to give this separate liability of the defendant any substantive incidence or ancillariness to the equitable relief of injunction and restitution, the Government's joinder of these separate equitable and legal causes of action in a single complaint constitutes merely a procedural union and can be accorded no more effect than the procedural provisions authorizing it can soundly be said to have intended and would be entitled to produce.

■ Such a joinder of causes of action in federal practice has its source in Rule 18(a), Federal Rules of Civil Procedure, 28 U.S. C.A., which permits and encourages the practice but does not compel it. This op-

tional nature, coupled with the unilateralness of its right of exercise, could hardly soundly, without some unmistakable indication, be regarded as intended to affect in any substantive respect the rights of an adverse party as they would exist without the joinder. In other words, the Rule simply affords a vehicle for convenience, facilitation and economy in litigation procedurally, and it does not have as its object to put it within the power of one party or the court thereby to produce a substantive impingement upon any right or liability. And obviously, it is without difference in this respect whether all the underlying rights involved—as here, injunction, restitution and damages—are made the subject of a single statement of claims in the complaint or of distinct counts. This is mere form, which is without effect upon substance. Cf. United States v. Strymish, D.C.Mass., 86 F. Supp. 999, 1001.

■ Above all, it seems to us inexorably clear that any such union of equitable and legal claims in a complaint, under Rule 18 (a), should not nakedly be employed as, or unconcernedly be permitted to become, an instrument for curbing or prejudicing the substantive and fundamental right of jury trial, as that right otherwise would exist in relation to a separate legal cause of action which has been joined in the complaint. This immediate point ought not, in philosophical perspective at least, to be capable of much contention, in view of the explicit provision of Rule 38(a), Federal Rules of Civil Procedure, 28 U.S.C.A., applicable to all procedure under the Rules, including joinder, that "The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate."

■ In the long range, if the right of trial by jury is actually to be preserved thus inviolate to the parties, its proclamation in legal letter can only be kept from becoming an artificiality by the accompaniment of a sympathetic judicial attitude. And such a

---

5. The question of a court's right generally to accord even procedural subordinancy to the damage liability in a situa-

tion under the Price Control or Housing and Rent Act is later discussed.

hospitable spirit on the part of a court to a preserving generally of that inviolateness would seem naturally to suggest that, where joinder has been made of co-ordinate equitable and legal causes of action and some of such causes of action, as here, involve a common, controlling issue of fact, on which there normally is a right to a jury trial as to the legal cause of action, the question ordinarily should be deferentially allowed to be determined by a jury, rather than for the court, without some special reason or impelling circumstance in the situation, to undertake to foreclose it as a matter of res judicata by designedly proceeding to make a previous disposition of the equity cause of action.

Any other viewpoint, we think, would not constitute a proper honoring of Rule 38(a), supra, and would leave the court's contrary action, unless based upon some special prompting consideration in the particular situation, subject to the interpretation of a judicial desire to thwart or curb the right of jury trial in the case. In professional evaluation, it could not be regarded as reflecting any high mark of judicial respect for the inviolateness of jury trial, if the permission to join causes of action granted by the Rule should be allowed to become simply an instrument for cutting off the right, which a defendant otherwise would possess, and of which he desired to avail himself in the particular situation, of obtaining a jury determination on a crucial issue of controversy between the parties. And no more creditable, we incidentally may add, would it be for a court conversely to undertake, through an according of invariable previousness to the disposition of an equitable cause of action, to treat such a joinder, at the urgence of a defendant, as an instrument for cutting off a plaintiff's equally sacred right of trial by jury or, beyond this, to view—as some trial courts have done—such a joinder of equitable and legal causes of action by a plaintiff as being subject to treatment as a legal waiver of all right to a jury trial on any question, whether common to the joined causes of action or whether belonging to the legal cause of action alone. Cf. Ring v. Spina, 2 Cir., 166 F.2d 546, 550; 3 Moore's Federal Practice 3010, 1947 Cum.Supp. 6, 22.

██ It ought perhaps to be added that, though the legal cause of action for damages under section 205(e) of the Emergency Price Control Act and section 205 of the Housing and Rent Act of 1947 is not in express terms made subject to the right of trial by jury, the matter of recovery has been left by the general language of the statute within the traditional scope and nature of the common law action of debt and as such would conceptually fall within the jury-trial guarantee of the Seventh Amendment of the Constitution. We so impliedly recognized and treated it in Shearer v. Porter, 8 Cir., 155 F.2d 77. Actions to recover liquidated damages granted by a statute, whether such damages are intended to be penal in nature or merely remedial, as here, have generally been recognized as constituting, in conceptual nature and legal attributes, common law actions of debt, except where the statute has given them some special and different form. Cf. 26 C.J.S., Debt, Action of, § 2, page 16; United States v. Jepson, D.C.N.J., 90 F.Supp. 983, 984, 985; Orne v. Roberts, 51 N.H. 110, 115.

On the basis of what has been said, it follows that the trial court here erred in making disposition of the cause of action for damages under the statutes involved as a matter of equity jurisdiction and in the form of an equity mandate for payment. The statute, as we previously have declared, left the liability for damages without any substantive incidence or ancillariness to the rights of injunction or restitution, and the court could not subject it to any, either as a matter of natural equity power or on the theory of any acquired substantive subordinacy from the procedural joinder permitted by Rule 18(a), supra. Moreover, even if the court here had in fact regarded and treated the recovery of damages as constituting a separate legal cause of action, it still would not have been warranted, as we previously have indicated, within the spirit and intent of Rule 38(a), supra, in seeking to foreclose, through res judicata, defendant's right to a jury determination of the common substantial questions of fact involved, by procedurally effecting a previ-

ous disposition of the equitable cause of action for restitution, without some special reason or impelling circumstance for taking that course. And beyond this, in the specific situation here involved, where restitution had been requested only as a matter of allotment or deduction out of such damages as might be recovered, it would be difficult to see why a court should at all desire to make a pre-emptive equitable jump into the common questions of fact involved in the restitution and damage liabilities, by proceeding to a previous disposition of the equitable cause of action and so foreclosing the determination of these question by a jury.

But, to go still farther, even if restitution here had been independently sought by the Government, instead of as a requested allotment or deduction out of the damages recovered,[6] and if there had existed some special reason or impelling circumstance in the situation to warrant the court in procedurally making a previous disposition of this equitable cause of action, with its accompanying effect on the legal cause of action as an adjudication of the factual questions of violation and the amount of the overcharges made, there yet would have remained the right to have a jury called in the legal cause of action to try the questions of whether the overcharges had been wilful or, if not, whether they were the result of failure to take practicable precautions. These were questions having no legal relationship whatever to the cause of action for restitution, and which therefore were utterly without any possible basis for adjudication as a matter of equity jurisdiction.

That far, even the case of Orenstein v. United States, 1 Cir., 191 F.2d 184, upon which the Government relies, goes, although it takes a contrary view to that which we have expressed above, on the question of a court of equity's unqualified procedural right to adjudicate the questions of violation and the amount of the overcharges as a matter of restitution and thus to eliminate the need for any jury trial on these questions in the cause of action for damages, when no judicial reason exists for so proceeding other than the pleasure of the plaintiff or the desire of the court itself to escape calling a jury.

On this latter question, for the reasons which have heretofore been stated, it is not possible for us to agree with the underlying concept of the Orenstein case, that Rule 38(a), supra, in its reminder of the intended inviolateness of the right of trial by jury, does not in such a situation imply any equitable pause as a matter of natural judicial hospitableness and proper procedural honoring. We believe generally, with Bruckman v. Hollzer, 9 Cir., 152 F.2d 730, that, where there has been a joinder of separate equitable and legal causes of action, which involve some substantial common issue or issues of fact, whose determination has been made the subject of a proper demand for a trial by jury in the legal cause of action, it is the intention of the Rules of Civil Procedure that the court shall procedurally allow the issue or issues to be so determined, except where some special and impelling reason exists in the particular situation for proceeding with a previous disposition of the equitable cause of action.

Moreover, if Rule 38(a) is not thus required to be read and given respect in relation to Rule 18(a), permitting joinder, but a trial court may, with absolute and unreviewable right in such a situation, as the Orenstein case, supra, holds, proceed to a previous disposition of the equitable cause of action, regardless of the lack of any reason for such a course and regardless of its impact generally upon the right of jury trial, then a similar plenary power to produce limitations procedurally in the field of jury trial must necessarily be recognized as also existing under Rule 42(a), authorizing

6. The question of whether restitution normally should be granted under the Price Control and Housing and Rent statutes, where full treble damages are also sought to be recovered, or whether restitution should in such a case be remedially granted only in an extreme situation is not here involved, in view of the request of the complaint for restitution only as an allotment or deduction out of the damages recovered.

a court to make consolidations of any separately pending actions involving a common question of fact. All of this together could and ultimately would in practice affect a vast area in the domain of jury trial and subject the right generally to a substantial artificial shrinkage in its actual existence and fundamental protectiveness.

We do not mean to imply that it would not be legally possible for a procedural code or set of rules validly to undertake to effect any such substantial, indirect result. We merely hold that the Federal Rules of Civil Procedure, as they now exist, cannot reasonably, in the light of Rule 38 (a), emphasizing the intention of the Rules to preserve inviolate the right of trial by jury, and of Rule 42(b), specifically mentioning the power of a court to "avoid prejudice" through granting a separate trial of any claim or cause, etc., be regarded as having been intended to permit any such general, indirect limitation or impingement upon the right of trial by jury to be needlessly produced.

In summary, a federal court may not under the Rules of Civil Procedure, in a situation of joined or consolidated equitable and legal causes of action, involving a common substantial question of fact, deprive either party of a properly demanded jury trial upon that question, by proceeding to a previous disposition of the equitable cause of action and so causing the fact to become res judicata, unless there exist special reasons or impelling considerations for the adoption of such a pre-empting procedural course in the particular situation.

It thus, as we have stated, must be held that the trial court here erred, first, in treating the cause of action for damages as being entirely subject to disposition in equity jurisdiction (and in any event the questions of whether the violations had been wilful or, if not, whether they had been the result of failure to take practicable precautions) and, second, in undertaking, even if it had recognized the damage liability as

constituting a legal cause of action, to proceed, without any special reason or impelling consideration—as would then have to be regarded as the effect of its action in relation to the questions of violation and their amount—to an adjudication of these questions in equity and so to deprive appellant of a jury trial upon them.[7]

The Government argues that, if it should be held, as we have done, that the court so erred, we ought nevertheless not to reverse, because the printed record before us has not been made to contain the evidence in the trial court, and hence it is impossible to say that appellant was prejudiced by the court's error, in that the evidence may have been such as to have entitled the court to direct a verdict on all the questions involved, even if the cause of action for damages had been tried as one at law and a jury had been called.

28 U.S.C.A. § 2111 provides that "On the hearing of any appeal * * * the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." So, too, Rule 61, Federal Rules of Civil Procedure, 28 U.S.C.A., similarly requires that "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

In a slightly different situation than here but of equivalent legal effect, where a jury had originally been called but was erroneously discharged by the court during the course of the trial, we held that the improper dismissal of the jury could not on appeal be argued to be prejudicial error, where the evidence on final submission of the case gave rise to no submissible issue of fact. Burke Grain Co. v. St. Paul-Mercury Indemnity Co., 8 Cir., 94 F.2d 458, 463, 467. And in Forster v. Ins. Co. of North America, 2 Cir., 139 F.2d 875, 876, 877, the court, in directly applicable language, said that the wrongful denial of a jury trial is

---

7. The solicitude of the Supreme Court in relation to the preservation of the right of trial by jury is illustrated by its expressions in Hodges v. Easton, 106 U.S.

408, 1 S.Ct. 307, 27 L.Ed. 169, and City of Morgantown, W. Va. v. Royal Insurance Co., 337 U.S. 254, 258, 69 S.Ct. 1067, 93 L.Ed. 1347.

nevertheless harmless error, if "there was no issue of fact to submit to a jury."

The contention of the Government in this regard does not, however, reach to all the elements of the present situation. While the printed record has not been made to contain the trial evidence, it may passingly be observed that the findings of the trial court are in form as much, or more, suggestive of being evidence-balancing products than of being legally compelled results. But apart from and beyond this, there are two other considerations which make it impossible for the award of damages, as made, to stand. The first of these, which has already been pointed out, is the fact that the award was granted as an equitable mandate for special payment and not as a general judgment recovery. The second is that the award was made to include damages for overcharges on which action had not been instituted within one year "from the date of the occurrence of the violation."

■ The original complaint was filed on March 3, 1947 and properly incorporated violations which had occurred subsequent to March 2, 1946 and prior to February 4, 1947. The second amended complaint, however, filed on January 16, 1951, was made to include violations—and these, as a matter of fact, as to an entirely different housing accommodation—which ran back, not to January 16, 1950, but to September 1, 1948, and for which damages were awarded on that basis. The first amended complaint, filed on September 7, 1949, had similarly sought to recover damages for violations occurring as to different tenants than those named in the original complaint, running back more than a year prior to the filing of the amended complaint, but these are of no significance here, since the court seems to have denied recovery for any of the violations added in the amended complaint, on the ground that "the Plaintiff failed to make proof." But it is clear that as to the violations which were first included in the second amended complaint and which had occurred prior to January 16, 1950, no action for damages on account thereof had been instituted within one year "from the date of the occurrence of the violation,"

and that the court was in error in awarding a recovery therefor.

■ The Government attempts to argue that under the Rules of Civil procedure, 28 U.S.C.A., the inclusion of these violations in the second amended complaint entitled them to relation back to the date of the original complaint and so made them violations for which action had been properly instituted. Rule 15(c) provides that "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

To this contention an inescapable answer would be that the violations added in the second amended complaint were violations of the separate and subsequent Housing and Rent Act and not of the Emergency Price Control Act, on which the original complaint was based. Rights and liabilities under the Housing and Rent Act did not come into legal existence until July 1, 1947. See 50 U.S.C.A.Appendix, § 1902. Against this definitiveness in legislative creation and grant, we do not see how it would be possible to argue that Rule 15(c) was intended, or could be allowed to operate, to project such rights and liabilities, by relation back, to March 3, 1947, the date of the filing of the original complaint.

■ Beyond this, however, it also must be remembered that the provision in section 205 of the Housing and Rent Act of 1947, as well as in section 205(e) of the Emergency Price Control Act, granting a right of recovery in damages for violations on which action has been brought "within one year", is not a statute of limitations as to the use of the remedy, but a measure of the boundary or life of the substantive right itself. Cf. Matheny v. Porter, 10 Cir.; 158 F.2d 478, 479; Meyercheck v. Givens, 7 Cir., 180 F.2d 221, 223. Thus any violations, which are not within one year of their occurrence made the subject of an action, or of inclusion in a previously instituted action by amended pleading, filed within such one-year period, are violations for which substantively there exists no right

to damages under the statute, and for which Rule 15(c) accordingly cannot give birth to such a right as a matter of remedial relation back. That which has no substantive existence is without anything on which a remedial relation back can operate.

■ On the basis of what has been said, the award of damages made by the trial court, in its entered equitable form and allowed scope, must be vacated. And since the restitution directed was allotted out of the damages to which the court subjected appellant in the exercise of equitable jurisdiction, this too will be vacated as a matter of necessary incidence. Because, however, the printed record has not been made to show whether the court would or would not have been privileged to direct a verdict against appellant on the legal cause of action for damages, if a jury trial had been granted, appellant is not entitled to claim the right to be accorded a plenary and unconditional new trial. Were it not necessary to vacate the judgment, because of its improper equitable form and reach, and its inclusion of damages for which no right of recovery legally existed, we should probably have affirmed the damage award for failure to demonstrate satisfactorily that the denial of a jury trial was prejudicial error.

■ In view of the fact, however, that the case must go back for the rendition of a proper legal judgment, it seems appropriate in the situation to allow the trial court to reopen the case for jury trial, if the evidence was in fact such as to have entitled appellant to have had it submitted to a jury, had his demand for a trial by jury not been denied. This can be done through the court's undertaking to consider the situation initially on a remand as a question of summary judgment, as to the violations for which a damage right exists, on the basis of the transcript of the previous evidence. If that transcript is such as would have entitled the court to have directed a verdict against appellant on every issue of fact in the cause of action for damages, then a summary judgment in proper legal form may be entered against him, with an accompanying allotment or deduction therefrom as restitution. If on the transcript, the

court is convinced that questions of fact existed, on which appellant was improperly denied the right of jury determination, then, as an incident in its final disposition of the case, it may entirely vacate the previous damage proceedings and grant appellant a full jury trial. The injunction issued is, however, not intended to be affected by this mandate.

Appellant has raised numerous other questions, which, however, are matters of settled law and so do not merit discussion here.

The judgment is vacated to the extent above set out, and the cause is remanded for further proceedings not inconsistent with this opinion.